## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## SOUTHEASTERN DIVISION

SI03, INC.,                                )
                                           )
        Plaintiff,                         )
                                           )
v.                                         )        No. 1:16-CV-274 RLW
                                           )
MUSCLEGEN RESEARCH, INC., et al.           )
                                           )
        Defendants.                        )

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Musclegen Research, Inc.'s Motion to Dismiss. (ECF No. 63.) Plaintiff SI03, Inc. ("Plaintiff") opposes the Motion and it is fully briefed. Because Plaintiff's Complaint states a claim for relief under the Lanham Act, 15 U.S.C. § 1125(a), and for Missouri common law unfair competition, the Motion to Dismiss will be denied as to Counts I and II. Plaintiff concedes that Count III, for Missouri common law unjust enrichment, fails to state a claim and does not oppose its dismissal without prejudice. Count III will be dismissed without prejudice.

## Factual and Procedural Background

This is an action between competitors who manufacture and sell protein powder to consumers. Plaintiff's Complaint (ECF No. 1) asserts claims against Defendant Musclegen[1] ("Defendant") and Does 1-10 alleging false advertising under the Lanham Act, 15 U.S.C. § 1125(a) (Count I); unfair competition under Missouri common law (Count II); and unjust enrichment under Missouri common law (Count III).

_____

[1]The Complaint refers to Defendant as "MuscleGen Research, Inc.," but Defendant refers to itself as "Musclegen Research, Inc." The Court will use "Musclegen" except if quoting from a document in the record.

In the Complaint, Plaintiff alleges that Defendant markets its Genepro[2] protein powder product by falsely claiming it contains 30 grams of protein in a roughly 11.15 gram (1 tablespoon) serving, when Genepro actually has 10 or fewer grams of protein per 11.15 gram (1 tablespoon) serving. (ECF No. 1 ¶¶ 17-22.) Plaintiff also alleges that Genepro's marketing and packaging statement that it contains "medical grade" protein is incorrect, false, and misleading, as no industry or FDA standard exists for "medical grade" protein. (Id. ¶¶ 23-24.) Plaintiff asserts that purchasers of Defendant's products are likely to be misled and deceived by Defendant's product labeling, marketing, and advertising. (Id. ¶ 25.) Further, Plaintiff alleges that Defendant's false and misleading advertising is damaging to Plaintiff's reputation and goodwill, as these false and misleading representations are designed to deceive and entice consumers to purchase Defendant's products over Plaintiff's competing products based upon the false belief that Genepro is superior to other protein powders. (Id. ¶¶ 26-27.)

Plaintiff alleges that Defendant's wrongful conduct has caused confusion in the protein market, deprived Plaintiff of business, injured Plaintiff's relationships with current and prospective customers, and resulted in increased sales of Defendant's protein powder product. (Id. ¶¶ 28-29.)

This action was filed in November 2016. Plaintiff obtained a Default Judgment and Permanent Injunction against Defendant in December 2017, which enjoined Defendant from claiming (1) that any amount of a nutritional supplement product contained more protein than was actually present in such amount of the product; and (2) that any product contained protein designated as "medical grade," unless such designation as approved by the U.S. Food and Drug Administration. (ECF No. 28 at 7.) Defendant moved to vacate the Default Judgment and

_____

[2]The Complaint refers to Defendant's product as "GenePro," while Defendant refers to it as "Genepro." The Court will use Genepro except if quoting from a document in the record.

2

Permanent Injunction on the basis that it was void because Defendant had not been properly served with summons and complaint. After a lengthy discussion and careful consideration of the facts and issues with respect to service on Defendant, the Court vacated the Default Judgment and Permanent Injunction on December 9, 2019. (ECF No. 59.) Defendant filed the instant Motion to Dismiss in January 2020.

**Legal Standard**

"To survive a motion to dismiss for failure to state a claim, the complaint must show the plaintiff 'is entitled to relief,' Fed. R. Civ. P. 8(a)(2), by alleging 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" In re Pre-Filled Propane Tank Antitrust Litig., 860 F.3d 1059, 1063 (8th Cir. 2017) (en banc) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). In reviewing a Rule 12(b)(6) motion, the Court accepts all factual allegations as true and construes all reasonable inferences in the light most favorable to the nonmoving party. Usenko v. MEMC LLC, 926 F.3d 468, 472 (8th Cir.), cert. denied, 140 S. Ct. 607 (2019). The Court does not, however, accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts. Waters v. Madson, 921 F.3d 725, 734 (8th Cir. 2019). The complaint must "allege sufficient facts that, taken as true, 'state a claim to relief that is plausible on its face.'" K.T. v. Culver-Stockton Coll., 865 F.3d 1054, 1057 (8th Cir. 2017) (alteration in original) (quoting Iqbal, 556 U.S. at 678) (internal quotation marks omitted). A facially plausible claim is one "that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." Wilson v. Ark. Dep't of Human Servs., 850 F.3d 368, 371 (8th Cir. 2017) (internal quotation omitted). In addressing a motion to dismiss, a court "may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached

3

to the pleadings, and matters of public record." Mills v. City of Grand Forks, 614 F.3d 495, 498

(8th Cir. 2010) (cited case omitted).

**Discussion**

    A.   Counts I and II

    In Count I, Plaintiff alleges false advertising under § 43(a) of the Lanham Act for false

designations of origin and false deceptions. 15 U.S.C. § 1125(a). In Count II, Plaintiff asserts a

claim of unfair competition under Missouri common law.[3] To establish a claim of false

advertising under the Lanham Act, Plaintiff must demonstrate: (1) a false statement of fact by

Defendant in a commercial advertisement about its own or someone else's product; (2) the

statement actually deceived or has a tendency to deceive a significant portion of its audience; (3)

the deception is material in that it is likely to influence the decision to purchase the product; (4)

Defendant caused the false statement of fact to enter interstate commerce; and (5) Plaintiff has

been or is likely to be injured as a result of the false statement, either by direct diversion of sales

from Plaintiff to Defendant or by a loss of goodwill associated with Plaintiff's products. Buetow

v. A.L.S. Enters., Inc., 650 F.3d 1178, 1182-83 (8th Cir. 2011) (quoting United Indus. Corp. v.

Clorox Co., 140 F.3d 1175, 1180 (8th Cir. 1998)). "A statement may be literally false,

conveying an explicit factual message and in fact be false . . . , or may be implicitly false,

conveying the implied message and thereby deceiv[ing] a significant portion of its recipients[.]"

Fair Isaac Corp. v. Experian Info. Sols., Inc., 650 F.3d 1139, 1151 (8th Cir. 2011) (internal

quotations and citations omitted).

---

    [3]Because the action under Missouri common law for unfair competition utilizes the same elements as an action under the Lanham Act, Children's Factory, Inc. v. Benee's Toys, Inc., 160 F.3d 489, 491 n.2 (8th Cir. 1998), the Court will discuss only the alleged violation of the Lanham Act.

Plaintiff alleges that Defendant's claim its Genepro product has 30 grams of protein in a 1 tablespoon serving size, and its use of the term "medical grade" in labeling, marketing, and advertising, are false statements of fact that deceive or have a tendency to deceive a substantial segment of Plaintiff's customers and potential customers, and likely influence the purchasing decisions of Plaintiff's customers. (ECF No. 1 ¶ 32.)

Defendant moves to dismiss Plaintiff's Lanham Act false advertising claim on the basis that it no longer includes the phrase "medical grade" protein on its Genepro trade dress and advertising, with the exception of three inadvertent instances that have since been corrected. Defendant contends that Plaintiff's claims based on its prior use of "medical grade" protein language on trade dress and in advertising are moot.

Defendant also moves to dismiss on the basis that Plaintiff fails to state a claim because the protein equivalency and absorption rate statements in its trade dress and advertising (i.e., that one scoop of Genepro "equates to 30G Protein**") are true and are not misleading as a matter of law, because the asterisks following the equivalency statement on the trade dress and advertising direct the reader's attention to a reference to a National Institute of Health clinical trial that supports the equivalency and absorption-rate statements. Defendant asserts, "Any consumers who may have doubts about the equivalency statements are directed to the clinical trial and given enough information to find and review that trial." (ECF No. 64 at 7.)

The Complaint's factual allegations, as set forth above, are sufficient to state a claim for violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Defendant does not cite any persuasive authority to establish that Plaintiff's claims concerning use of the term "medical grade" on Genepro trade dress and advertising are moot. That Defendant asserts it revised its packaging and advertising in the three years since the Complaint was filed raises fact issues, and

5

does not absolve Defendant from potential liability for damages Plaintiff alleges it suffered as a result of the allegedly false claim in Genepro's trade dress and advertising.

Defendant's second argument, that Plaintiff's Complaint fails to state a claim because an internet link on Genepro's packaging and advertising to a clinical trial renders its allegedly false equivalency claims true, asks the Court to examine matters outside the pleadings on this Motion to Dismiss, which the Court declines to do. To grant the motion to dismiss, the Court would have to accept as true Defendant's assertion that the single clinical trial is scientifically valid and, construing the factual allegations in the light most favorable to Plaintiff, conclude as a matter of law that members of the public are not likely to be deceived by the challenged product packaging and advertising statements. Defendant has not made such a showing and the Court finds this is an argument appropriate for summary judgment, not a motion to dismiss. In sum, Defendant seeks to "shortcut the discovery process and reach the substantive factual issue at the heart of this case." Cynergy Ergonomics, Inc. v. Ergonomic Partners, Inc., 2008 WL 2064967, at *2 (E.D. Mo. May 14, 2008) (internal citation omitted). Defendants' Motion to Dismiss will be denied as to Counts I and II.

B. Count III

In Count III, Plaintiff asserts a claim for unjust enrichment under Missouri common law. Unjust enrichment has three elements: "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit under inequitable and/or unjust circumstances." Binkley v. American Equity Mortg., Inc., 447 S.W.3d 194, 199 (Mo. 2014) (en banc) (quotation omitted).

Defendant moves to dismiss Plaintiff's unjust enrichment claim on the basis that Plaintiff has not alleged it conferred any legally cognizable benefit on Defendant. Defendant asserts that

6

while Plaintiff alleges its sales were of "falsely advertised products" and "came at the expense of competitors, including Plaintiff," (ECF No. 1, ¶ 46), it is clear Plaintiff never conferred any benefit on Defendant.

In response, Plaintiff interprets Defendant's argument to be that Plaintiff has not alleged it purchased a unit of Genepro, and states it does not oppose dismissal of its unjust enrichment claim without prejudice "so that it may purchase a unit of GenePro and amend its Complaint." (ECF No. 65 at 10.)

Defendant replies that the unjust enrichment claim should be dismissed with prejudice, as a renewed claim would be futile because Plaintiff cannot suggest it has been misled in its proposed purchase of Genepro while simultaneously bringing this suit. In support, Defendant cites to In re Bisphenol-A (BPA) Polycarbonate Plastic Products Liability Litigation, 2011 WL 6740338, at *1 (W.D. Mo. Dec. 22, 2011), in particular:

> Coca-Cola held that consumers who would continue to purchase fountain Diet Coke knowing it contained saccharin could not assert MMPA [Missouri Merchandising Practices Act] or unjust enrichment claims against Coca-Cola for the company's failure to divulge its use of saccharin. According to Coca-Cola, these consumers "suffered no injury." Likewise, consumers who knew about BPA and purchased Defendants' products anyway suffered no injury.

Id. (citing State ex rel. Coca-Cola Co. v. Nixon, 249 S.W.3d 855, 862 (Mo. 2008) (en banc) (internal citations omitted).

Defendant's cited cases concerning class certification under the Missouri Merchandising Practices Act do not establish as a matter of law that Plaintiff could not bring an unjust enrichment claim if it were to purchase Genepro.[4]  As a threshold matter, the Missouri Supreme

---

[4]The Court offers no comment as to whether Plaintiff could bring an unjust enrichment claim if it were to purchase Genepro.  The Court considers only whether Defendant has established that Plaintiff's unjust enrichment claim should be dismissed with prejudice.

stated that for purposes of its class certification analysis in Coca-Cola, it was not necessary to distinguish and discuss separately the plaintiffs' MMPA and unjust enrichment claims. 249 S.W.3d at 858 n.2. It is not clear that Missouri case law concerning class certification under the MMPA is persuasive in the analysis required in the separate context currently before this Court. See, e.g., Bratton v. Hershey Co., 2017 WL 2126864, at *10 (W.D. Mo. May 16, 2017) (denying motion to dismiss Missouri unjust enrichment claim based on slack-filled product, although Missouri MMPA claim based on same facts was subject to dismissal).

In Coca-Cola, the plaintiff alleged that "she and many other consumers would not have purchased fountain Diet Coke if they had known it contained saccharin" and that "the deception, itself, resulted in irreparable harm." 249 S.W.3d at 859. The trial court certified a class of all purchasers of fountain Diet Coke during a specific time period but the Missouri Supreme Court reversed, finding the class was impermissibly overbroad because it "undoubtedly includes an extremely large number of uninjured class members, that is, those who did not care if the Diet Coke they purchased contained saccharin." Id. at 862. The court stated the plaintiff's "own expert witness indicated that only twenty percent of those who currently consume fountain Diet Coke would not continue to do so if they knew it contained saccharin," which meant that "eighty percent of the putative class suffered no injury." Id.

The Coca-Cola case does not hold that in every MMPA case there would not be an injury if the plaintiff "did not care" about the alleged MMPA violation. The Missouri Supreme Court emphasized that in Coca-Cola the "alleged injury was based on a subjective preference against saccharin," so a purchaser who did not have that preference could not have been injured, but that the result could be different in a case alleging an "economic injury . . . based on an objective characteristic," such that individual preferences were irrelevant. Id. at 863. Significantly, the

8

court distinguished a Missouri Court of Appeals case that approved certification of a class of cigarette purchasers who "thought they had purchased 'light' cigarettes, but the cigarettes they received had the characteristics of regular cigarettes." Id. (citing Craft v. Philip Morris Cos., 190 S.W.3d 368, 387 (Mo. Ct. App. 2005)). In Craft, the plaintiffs alleged they "failed to receive the qualities and economic value of a low tar, low nicotine cigarette." Coca-Cola, 249 S.W. 3d at 863; see also Hope v. Nissan N.A., Inc., 353 S.W.3d 68, 80 (Mo. Ct. App. 2011) (distinguishing Coca-Cola, "where the basis of the injury was a subjective consumer *preference*," from a case where the alleged injury is a diminished economic value of the product received by every purchaser, even if the purchaser was unaware of it); Plubell v. Merck & Co., 289 S.W.3d 707, 715 (Mo. Ct. App. 2009) (where plaintiffs alleged prescription drug they purchased was worth less than the product as represented, they stated an objectively ascertainable loss under the MMPA using the benefit-of-the-bargain rule).

Assuming for purposes of argument that MMPA precedent is relevant to Plaintiff's potential unjust enrichment claim, it is at least arguable Plaintiff's claim would be more similar to the Craft, Hope, and Plubell cases than to Coca-Cola, as it appears to concerns an economic injury based on an objective characteristic, not an injury dependent on subjective preferences. Defendant's motion to dismiss Count III with prejudice will be denied. Count III will be dismissed without prejudice.

**Conclusion**

For the reasons discussed above, the Court will deny Defendant's Motion to Dismiss Counts I and II of the Complaint, and will dismiss Count III without prejudice. The Court will separately issue an order requiring the parties to file a Joint Proposed Scheduling Plan.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Musclegen, Inc.'s Motion to Dismiss is

**GRANTED in part** and **DENIED in part**; the Motion is **GRANTED** as to Plaintiff's common

law unjust enrichment claim in Count III, which will be dismissed without prejudice, and

**DENIED** as to Counts I and II.  [ECF No. 63]

**IT IS FURTHER ORDERED** that Defendant shall file its Answer to the Complaint

within the time permitted by Rule 12(a)(4).

An appropriate Order of Partial Dismissal will accompany this Memorandum and Order.


_Ronnie L. White_
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this _13th_ day of May, 2020.