# EXHIBIT 3

# Kevin OShea

| | |
|---|---|
| **From:** | Kevin OShea |
| **Sent:** | Tuesday, September 29, 2020 1:59 PM |
| **To:** | Christopher G. Smith |
| **Cc:** | David Pasley; Gabriel Gore; Caitlin O'Connell |
| **Subject:** | RE: Defendant's Improper Discovery Responses [SMITHLAW-RDU.015982.00002] |

Chris and David,

To summarize my attempt to continue our telephonic meet and confer today, you were unwilling to discuss any of Defendant's Responses to Plaintiff's Requests for Production Nos. 2-8 and 10-13, which I reviewed with you serially.  You told me that I will "get what I get" from you, and that you believe that it is not necessary to conduct a telephone meet and confer despite the Court's Standing Order directing parties to do just that.  You told me that I was wrong about Defendant's and your position numerous times during the call but refused to explain how I was wrong.  You also invited me to proceed with filing a motion to compel.

I asked for your availability to continue the telephonic meet and confer, and you refused to provide any times; instead, you continued your position that a telephonic meet and confer is not appropriate in this case.

Regards,

Kevin J. O'Shea
Principal
OShea Law LLC
Office:  (573) 388-2296
Cell:  (312) 282-3484

-----Original Message-----
From: Kevin OShea
Sent: Sunday, September 27, 2020 5:24 PM
To: Christopher G. Smith
Cc: David Pasley; Gabriel Gore; Caitlin O'Connell
Subject: Re: Defendant's Improper Discovery Responses [SMITHLAW-RDU.015982.00002]

I have meetings after that call, so 2:00 pm eastern on Tuesday.

Kevin J. O'Shea
Principal
OShea Law LLC
1744 Ridge Road
Jackson, MO  63755
Cell:  (312) 282-3484
Office:  (573) 388-2296

On Sep 27, 2020, at 5:05 PM, Christopher G. Smith <csmith@smithlaw.com> wrote:

Kevin, I need to move our meet and confer call to Tuesday.  We can speak before or after speaking with Joe Jacobsen.  Your pick.

Sent with BlackBerry Work
(www.blackberry.com)


From: Kevin OShea <koshea@oshealawllc.com<mailto:koshea@oshealawllc.com>>
Date: Friday, Sep 25, 2020, 3:55 PM
To: Christopher G. Smith <csmith@smithlaw.com<mailto:csmith@smithlaw.com>>
Cc: David Pasley <dpasley@smithlaw.com<mailto:dpasley@smithlaw.com>>, 'Gabriel Gore' <ggore@dowdbennett.com<mailto:ggore@dowdbennett.com>>, 'Caitlin O'Connell' <coconnell@dowdbennett.com<mailto:coconnell@dowdbennett.com>>
Subject: RE: Defendant's Improper Discovery Responses [SMITHLAW-RDU.015982.00002]

Chris,

It's great to see that you now are available this afternoon, just like you said earlier this week you would be.  Let's finish the call now.  I'm still in the office so call me.  I realize I have a tendency to be bellicose – indeed, a person who was not in my office noted this morning that my laughter could be heard a fair distance away – so I'll try to keep my voice softer.

You did not contest any of the facts set forth in my summary; instead, you slander me without any facts.  If you intend to accuse me of being a liar, present the facts supporting that accusation or withdraw it.  That said, I certainly do not want to proceed under any misunderstanding.  So I'll set out for you the facts from my summary email below and you can identify which ones you contend I lied about:


·       Was I lying when I said in my email that Defendant demands that SI03 pay Defendant's attorneys' fees, and that these fees are, to date, no more than $50,000?

·       Was I lying when I said in my email that you said that you did not know the exact amount that Defendant demands in attorneys' fees?

·       Was I lying when I said in my email that you said that Defendant alleges that SI03's Nectar Medical products violate 21 U.S.C. § 360ee(b)(2) based on Defendant's understanding of the definition of "medical food" contained in that subsection?

·       Did you not read to me the definition of "medical food" from 21 U.S.C. § 360ee(b)(2)?

·       Was I lying when I said in my email that you said that Defendant alleges that all of SI03's products other than its Nectar® Medical products fail to include words that Defendant believes are required by FDA regulations relating to dietary supplements, and that Defendant believes that the relevant information on SI03's labels is not sufficiently "prominent"?

·       Was I lying when I said in my email that you did not provide Defendant's definition of the term "prominently" in the context of the FDCA and/or FDA regulations?

·       Was I lying when I said in my email that you "stipulated" multiple times – four times by my count – that the FDCA and related FDA regulations do not give rise to a private cause of action?

·       Was I lying when I said in my email that you characterized your client's employees as "enraged" by this lawsuit?

·       Have you and others on your team not characterized representatives of your client as "military guys who jump from planes on a base in North Carolina"?

2

·      Was I lying when I said in my email that you said that Defendant has a "well curated following in the bariatric community online" and that Defendant's representatives intend to allege to that "well curated following" that SI03 is violating FDA regulations?

·      Was I lying when I said in my email that you referred to my client's "history" with the FDA and that you followed that statement with references to "shut down letters," "notice letters," and recall orders issued by the FDA?

·      Were you not unable to identify anything other than the existence of this lawsuit to support the idea that SI03 has disparaged your client, as implied by your proposal that the parties not "continue" disparaging one another?

·      Was I lying when I said in my email that you acknowledged that statements made in a lawsuit are subject to the "litigation privilege"?

·      Was I lying when I said in my email that you acknowledged that Defendant's position, i.e., that reaching out to its "well curated following in the bariatric community online" to allege that SI03 is violating FDA regulations is not improper, presented a "hole" in your proposal that the parties not "continue" disparaging one another?

·      Was I lying when I said in my email that you were unable to propose any manner in which this "hole" could be repaired other than "paper[ing] it over" because you were only prepared to propose broad outlines and that you did not have actual language ready?

·      Was I lying when I said in my email that you said that Defendant maintains its objections to SI03's Requests for Admission Nos. 1-12, 14-21, and 23-35, and SI03's Requests for Production Nos. 22-62, all of which are based on Defendant's position that SI03's Third Claim for Relief somehow does not exist?

·      Was I lying when I said in my email that Defendant has not filed a Rule 12(b)(6) motion seeking to dismiss SI03's Third Claim for Relief?

·      Was I lying when I said in my email that Defendant has not filed a Rule 12(c) motion seeking to dismiss SI03's Third Claim for Relief?

·      Was I lying when I said in my email that Defendant has not filed a motion for summary judgment directed to SI03's Third Claim for Relief?

·      Was I lying when I said in my email that stated that you were unable to address the issues we raised in connection with Defendant's Response to SI03's Request for Production No. 1 because you need to "raise it with your client"?

·      Was I lying when I said in my email that SI03's Request for Production No. 1 was served on August 4, 2020?

·      Was I lying when I said in my email that you were unable to tell me when Defendant will resume, much less complete, its production of responsive documents?

·      Was I lying when I said in my email that you were unable to tell me when Defendant will produce a privilege log because that depends on which documents you gather from Defendant?

·      Was I lying when I said in my email that you appeared to be unaware – until I told you – that Defendant is in violation of the Court's Standing Order relating to privilege logs?

·      Was I lying when I said in my email that you stated that you will serve Defendant's verification of its interrogatory responses on September 29, 2020 "under penalty of perjury" until such time as your client can get those verifications notarized (at which point you will serve amended verifications)?

·      Was I lying when I said in my email that you were unable to continue the discussion due to your "hard stop" at 11:50 a.m. eastern to prepare for another call at 12:00 p.m. eastern?

·      Was your limited availability conveyed to me in your email below, where you said "[w]ill review [my September 24, 2020 letter re Defendant's improper discovery responses] and happy to discuss tomorrow [i.e., this morning] when I call you."?

·      Aren't the following issues the only ones remaining from my September 24, 2020 letter for our call on Monday, September 28, 2020 at 12:00 p.m. central/1:00 p.m. eastern:  Defendant's Responses to SI03's Requests for Production Nos. 2-8, 10-18, and 20?

·      Was I lying when I said in my email that we agreed that I would contact Mr. Jacobson by email and provide him Plaintiff's First Amended Complaint and Defendant's First Amended Counterclaims (i.e., the pleadings that you proposed I send)?

·      Was I lying when I said in my email that you told me that your local counsel said he believes Joe Jacobson would be a good mediator for this matter?

·      Was I lying when I said in my email that I had explained, again, that SI03's position remains that there is no need to look outside of the Court's Approved Neutral List for someone with FDA expertise because there are no FDA-related claims in this case and, as you "stipulated" numerous times during our call, there never will be because the alleged conduct that you described does not give rise to a private cause of action?

·      Did you not suggest that the parties should consider not proceeding with mediation because the parties' positions are far apart?

·      Did I not respond to that suggestion by saying that we need to proceed with the mediation because (i) it is the mediator's job to bridge the gap in the parties' positions, which always exists at the outset of a mediation, regardless of the breadth of that gap; (ii) the parties agreed to this ADR track; and (iii) consistent with the parties' agreement, the Court has ordered the mediation.

·      Did I not tell you that SI03 will oppose any motion by Defendant to cancel the mediation?

I look forward to hearing which of these facts from my summary email below is incorrect.

Kevin J. O'Shea
Principal
OShea Law LLC
Office:  (573) 388-2296
Cell:  (312) 282-3484

From: Christopher G. Smith [mailto:csmith@smithlaw.com]
Sent: Friday, September 25, 2020 2:48 PM
To: Kevin OShea
Cc: David Pasley; 'Gabriel Gore'; 'Caitlin O'Connell'
Subject: RE: Defendant's Improper Discovery Responses [SMITHLAW-RDU.015982.00002]

CONFIDENTIAL
RULE 408

Kevin, your email is both disappointing and concerning. The mischaracterizations are remarkable, as was our call. It was very difficult to have a conversation with you with constant interruptions by you as well as a raised voice from your end. I always believe in second chances, but I am not optimistic about our ability to speak in good faith given that your "summary" has such a slight resemblance to the discussion you purport to summarize. But the Court will expect me to try to deal constructively with my opposing counsel and I will work to do so.

I was especially surprised also because I thought to this point our communications had been good.

What I did say is that this case makes little sense to me. I have said that in the presence of others to you from the get-go and you have agreed with that sentiment and you have specifically demurred and complained that you inherited this matter from predecessor counsel, and for which I have expressed sympathy to you. The ground has shifted though and I firmly believe it has become a greater problem for your client, but one that I wish to address constructively. We had a conversation that we both agreed was Rule 408 but I see no mention of that and I categorically reject any attempt to twist the discussion that we did have into anything improper as your "summary" purports to do.

I am at a bit of a loss for words at this moment. I did not think we would even need an hour this morning and anticipated a constructive call between lawyers seeking a solution to a problem for their clients. I think now I should have called time-out the first time you raised your voice at me.

You have not even properly described my observations about Joe Jacobson. I said only that he was described as a seasoned and capable litigator who is good at mediation and said it would be fine to check his availability but I did not agree to him. I also said and continue to maintain that a mediator with experience with FDA matters will help us if we seek to resolve this but you objected to that suggestion. I would welcome your reconsideration of that item.

I will call you Monday at 1ET as I suggested. I hope it will be a better call but raised voices and misstatements of the record are not appropriate. At the conclusion of the call, we will document to you our position on the outstanding discovery issues and then you will be able to act as you think appropriate.

Have a good weekend.

CHRISTOPHER G. SMITH | PARTNER
csmith@smithlaw.com<mailto:csmith@smithlaw.com> | bio<http://www.smithlaw.com/professionals-Christopher-Smith#ViewAll>
o: 919.821.6745 | m: 919.749.8349
vcard<http://www.smithlaw.com/vcard-133.vcf> smithlaw.com<http://www.smithlaw.com> | map<http://www.smithlaw.com/contact#Directions>
[Smith Anderson]<https://twitter.com/smithlaw>[Smith Anderson]<https://www.facebook.com/SmithAndersonLaw>[Smith Anderson]<http://www.linkedin.com/company/smith-anderson>
[Smith Anderson]
Sign up<http://www.smithlaw.com/signup> to receive legal updates
From: Kevin OShea [mailto:koshea@oshealawllc.com]
Sent: Friday, September 25, 2020 1:34 PM
To: Christopher G. Smith <csmith@smithlaw.com>
Cc: David Pasley <dpasley@smithlaw.com>; 'Gabriel Gore' <ggore@dowdbennett.com>; 'Caitlin O'Connell' <coconnell@dowdbennett.com>
Subject: RE: Defendant's Improper Discovery Responses [SMITHLAW-RDU.015982.00002]

Chris,

To summarize our call this morning regarding Defendant's claims, Defendant is seeking its attorneys' fees, which you said are presently no more than $50,000.00 (you were unable to give me exact figures). Further, Defendant alleges that

SI03's Nectar Medical products violate 21 U.S.C. § 360ee(b)(2), based on the definition of "medical food" contained in that subsection.  You have raised this issue before but this time you acknowledged that 21 U.S.C. § 360ee(b)(2) does not give rise to any private cause of action, so it was initially unclear how this could be relevant to the parties' claims in this lawsuit.

You then explained that Defendant alleges that all of SI03's products other than its Nectar® Medical products fail to include words that Defendant believes are required by FDA regulations relating to dietary supplements, and that Defendant believes that the relevant information on SI03's labels is not sufficiently "prominent," though you did not provide Defendant's definition of the term "prominently" in the context of the FDCA and/or FDA regulations.  Once again, you stipulated that even if this were true, and I explained that from my experience in FDA matters it is not, that would not give rise to any private cause of action that Defendant could file against SI03.  So it was still unclear how these allegations, even if true, were relevant to the claims in this lawsuit.

You then referenced SI03's "history" with the FDA and referred to "shut down letters," "notice letters," and recall orders issued by the FDA, which clarified your intent with this call:  you requested the call to threaten SI03 that if it did not yield to Defendant's demands, Defendant will file a claim with the FDA against SI03.  In support of Defendant's threats, you said that Defendant's representatives – "military guys who jump from planes on a base in North Carolina" – have become "enraged" by this lawsuit and that these same people are very savvy in the "electronic world" and particularly with electronic forums and social media.  Continuing, you threatened that Defendant's personnel intend to begin contacting Defendant's "well curated following in the bariatric community online" and slander SI03 to that group, with the types of allegations that you told me about during the call, unless SI03 acquiesces to Defendant's demands, including payment of Defendant's attorneys' fees.  You did not give me a timeline for when Defendant's people intend to begin their online smear campaign or file their claim with the FDA, so please provide that information.

You proposed that the parties agree to cease disparaging one another, which raised the question of how SI03 is disparaging Defendant.  You said that this lawsuit disparages Defendant, to which I responded that – as we both know – a lawsuit is not disparagement, libel, slander, etc.  Unlike the very detailed information you were able to provide about the smear campaign that Defendant intends to wage against SI03, you had no other examples of SI03's alleged disparagement of Defendant.  I pointed out the extraordinarily obvious gap in your idea, i.e., that it would not address Defendant's threatened smear campaign because, according to Defendant, there is nothing wrong with its representatives slandering SI03 to Defendant's "well curated following in the bariatric community online."  You acknowledged that, indeed, this is an obvious hole and said it could be papered over, though you had not anticipated this issue and had no suggestion for how to paper it over.

I explained several times during our call that none of the information you conveyed is in either of Defendant's counterclaims, and you repeatedly "stipulated" that none of the conduct that Defendant accuses SI03 of engaging in, even if true, gives rise to any private cause of action.  Thus, Defendant is merely threatening that it will engage in tortious interference and slander based on non-justiciable claims.  We appreciate you telling us about Defendant's intentions and, as noted above, we would appreciate it if you would tell us the timeline for Defendant's intended actions.

Regarding Defendant's improper discovery responses as outlined in my September 24, 2020 letter, you had limited time available despite your email yesterday afternoon saying that we discuss all of the issues today.  During your limited time, you told me that Defendant refuses to withdraw its objections to SI03's Requests for Admission Nos. 1-12, 14-21, and 23-35, and also refuses to withdraw its objections to SI03's Requests for Production Nos. 22-62, all of which are based on Defendant's position that SI03's Third Claim for Relief somehow does not exist.  I pointed out that Defendant did not move to dismiss, or move for summary judgment of, that claim, to which you did not respond.  Further, you were not prepared to respond to our positions regarding your client's objections to SI03's Requests for Production No. 1, saying that you need to "raise it with the client" even though this Request was served on August 4, 2020.  You were also unable to tell me when you will resume, much less complete, Defendant's production of responsive documents, or when you will produce Defendant's privilege log, saying that the privilege log depends on the document production.  The inescapable conclusion from that statement is that you have not conducted a search of your client's records for

responsive documents, and you have no idea when that search will be performed, much less completed.  I explained that your client is in violation of the Court's Standing Order regarding discovery, a fact that you seemed to be unaware of.

You told me that you will serve Defendant's verification of its interrogatory responses on September 29, 2020 "under penalty of perjury" until such time as your client can get those verifications notarized (at which point you will serve amended verifications).

You were unable to continue our discussion so we agreed to another call on Monday, September 28, 2020 at 12:00 pm central/1:00 pm eastern.  The issues remaining from my September 24, 2020 letter are Defendant's Responses to SI03's Requests for Production Nos. 2-8, 10-18, and 20.

Finally, we agreed that I will contact Joe Jacobson – the neutral from our list who your local counsel said has good relevant experience and would be a good mediator in view of the parties' claims.  I will provide him the extant pleadings and ask his availability for the mediation in view of the Court's Order (which adopted the parties proposed schedule set forth in their Joint Proposed Scheduling Plan).  I repeated SI03's position that there is no need to look outside of the Court's Approved Neutral List for someone with FDA expertise because there are no FDA-related claims in this case and, as you "stipulated" numerous times during our call, there never will be because the alleged conduct that you described does not give rise to a private cause of action.  You suggested that the parties should not proceed with mediation because the parties' positions are far apart, and I responded that we need to proceed with the mediation because (i) it is the mediator's job to bridge the gap in the parties' positions, which always exists at the outset of a mediation, regardless of the breadth of that gap; (ii) the parties agreed to this ADR track; and (iii) consistent with the parties' agreement, the Court has ordered the mediation.  I also told you that if Defendant files a motion to cancel the mediation, SI03 will oppose such a motion.

I look forward to talking to you again on Monday at 12:00 central/1:00 eastern.  As I mentioned, please call my office number.

Regards,

Kevin J. O'Shea
Principal
OShea Law LLC
Office:  (573) 388-2296
Cell:  (312) 282-3484

From: Christopher G. Smith [mailto:csmith@smithlaw.com]
Sent: Thursday, September 24, 2020 3:45 PM
To: Kevin OShea; David Pasley; 'Gabriel Gore'; 'Caitlin O'Connell'
Subject: RE: Defendant's Improper Discovery Responses [SMITHLAW-RDU.015982.00002]

Thanks Kevin.  Acknowledging receipt.
Will review and happy to discuss tomorrow when I call you.

CHRISTOPHER G. SMITH | PARTNER
csmith@smithlaw.com<mailto:csmith@smithlaw.com> | bio<http://www.smithlaw.com/professionals-Christopher-Smith#ViewAll>
o: 919.821.6745 | m: 919.749.8349
vcard<http://www.smithlaw.com/vcard-133.vcf> smithlaw.com<http://www.smithlaw.com> | map<http://www.smithlaw.com/contact#Directions>

[Image removed by sender. Smith Anderson]<https://twitter.com/smithlaw>[Image removed by sender. Smith Anderson]<https://www.facebook.com/SmithAndersonLaw>[Image removed by sender. Smith Anderson]<http://www.linkedin.com/company/smith-anderson>

[Image removed by sender. Smith Anderson] Sign up<http://www.smithlaw.com/signup> to receive legal updates

From: Kevin OShea [mailto:koshea@oshealawllc.com]
Sent: Thursday, September 24, 2020 3:54 PM
To: David Pasley <dpasley@smithlaw.com>; Christopher G. Smith <csmith@smithlaw.com>; 'Gabriel Gore' <ggore@dowdbennett.com>; 'Caitlin O'Connell' <coconnell@dowdbennett.com>
Subject: Defendant's Improper Discovery Responses

Counsel,

Please see the attached correspondence.  We can discuss these issues during our previously scheduled call on 9/25.

Regards,

Kevin J. O'Shea
Principal
OShea Law LLC
Office:  (573) 388-2296
Cell:  (312) 282-3484

IMPORTANT: This e-mail message is intended solely for the individual or individuals to whom it is addressed. It may contain confidential attorney-client privileged information and attorney work product. If the reader of this message is not the intended recipient, you are requested not to read, copy or distribute it or any of the information it contains. Please delete it immediately and notify us by return e-mail or by telephone (919) 821-1220.