UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| SI03, INC., | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   No. 1:16-CV-274 RLW |
| | ) |
| MUSCLEGEN RESEARCH, INC., | ) |
| | ) |
|    Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on several motions: Defendant Musclegen Research, Inc.'s ("Defendant") Motion for Leave to File Amended Answer and for a Protective Order (ECF No. 106); Plaintiff SI03, Inc.'s ("Plaintiff") Motion to Compel the Depositions of Defendant and its Employees (ECF No. 108), Plaintiff's Motion for Leave to File a Second Amended Complaint (ECF No. 121), Plaintiff's Motion for a Temporary Restraining Order Directing Defendant to Immediately Cease Sales and Marketing of Genepro, and for Expedited Discovery (ECF No. 111), and Plaintiff's Motion for a Temporary Restraining Order Freezing Defendant's Assets, and for Expedited Discovery (ECF No. 114). Each motion is opposed and is fully briefed. The Court will also address Plaintiff's Third Motion to Compel Discovery Responses (ECF No. 132).

**Factual and Procedural Background**

This is an action between competitors who manufacture and sell protein powder to consumers. Plaintiff's original complaint, filed in November 2016, asserted claims for false advertising under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count I), unfair competition under Missouri common law (Count II), and unjust enrichment under Missouri common law (Count III). Plaintiff obtained a Default Judgment and Permanent Injunction against Defendant in December 2017, which enjoined Defendant from claiming (1) that any amount of a nutritional

supplement product contained more protein than was actually present in such amount of the product; and (2) that any product contained protein designated as "medical grade," unless such designation was approved by the U.S. Food and Drug Administration. (ECF No. 28 at 7.) Defendant moved to vacate the Default Judgment and Permanent Injunction on the basis that it was void because Defendant had not been properly served with summons and complaint. After careful consideration of the facts and issues with respect to service on Defendant, the Court vacated the Default Judgment and Permanent Injunction on December 9, 2019. (ECF No. 59.)

The Court denied Defendant's Motion to Dismiss with respect to Counts I and II of the original complaint and dismissed Count III without prejudice. See Mem. and Order of May 13, 2020 (ECF No. 67). Defendant filed an Answer, Affirmative Defenses, and Counterclaim on May 27, 2020. (ECF No. 70.) Defendant's Counterclaim asserted claims for false advertising under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count I), and unfair competition under Missouri common law (Count II), based on Plaintiff's marketing of its products as "medical" proteins. (ECF No. 70 at 10-11.) After the parties submitted a joint proposed scheduling plan, the Court issued a Case Management Order ("CMO") (ECF No. 75). The CMO's deadline for motion to amend pleadings was August 14, 2020, and for completion of discovery was February 12, 2021. (Id. at 3.) The dispositive motion deadline is March 12, 2021, and the trial date is August 16, 2021. (Id.)

Plaintiff was granted leave of Court to file its First Amended Complaint ("Complaint") in August 2020 (ECF No. 88). The Complaint asserts claims against Defendant for false advertising under the Lanham Act, 15 U.S.C. § 1125(a) (Count I); unfair competition under Missouri common law (Count II); and declaratory judgment that (i) Plaintiff is not infringing any rights Defendant may have in the marks NECTAR PROTEIN and/or PROMINA, (ii) Defendant has no rights in the marks; and (iii) any trademark registration obtained by Defendant in either

mark is invalid and unenforceable (Count III).  The Complaint alleges that Defendant markets its Genepro protein powder product by falsely claiming it contains 30 grams of protein in a roughly 11.15 gram (1 tablespoon) serving, when Genepro actually has 10 or fewer grams of protein per 11.15 gram (1 tablespoon) serving; and by claiming the protein in Genepro is absorbed by the human body at a rate that is 300% higher than the rate at which a human body absorbs "traditional whey."  (ECF No. 88 ¶¶ 9-14.)  Plaintiff also alleges that Genepro's marketing and packaging statement that it contains "medical grade" protein is incorrect, false, and misleading, as no industry or FDA standard exists for "medical grade" protein.  (Id. ¶¶ 17-20.)

Defendant filed its Amended Answer, Affirmative Defenses, and Counterclaims ("Answer") in September 2020 (ECF No. 92).  In the Answer, Defendant admits among other things, that:

> 1 tablespoon of its Genepro product does not contain 10 grams of protein and further admits that its Genepro product has three times the protein absorption rate as traditional whey protein—meaning that consuming one scoop of Genepro is the functional equivalent of consuming 30 grams of whey protein.  Attached as Exhibit 2 is a true and correct copy of the clinical trial NCTO2919657, which supports this equivalency statement; [and]
> . . . .
>
> the protein in Genepro is absorbed by the human body at a rate that is 300% higher than the rate at which the human body absorbs traditional whey proteins, such that consuming one serving of Musclegen is the functional equivalent of consuming 30 grams of traditional whey protein[.]"

(Id. at 2 ¶ 10; 3 ¶ 13.)  Defendant's Counterclaims, asserted in the alternative, are for false advertising under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count I), and unfair competition under Missouri common law (Count II), based on Plaintiff's marketing of its products as "medical" proteins; as specifically formulated for renal dialysis and bariatric surgery patients; with misleading statements regarding the protein content and quality of its whey protein products; and as failing to contain required disclaimers on trade dress.  (Id. at 16-18, ¶¶ 21-39.)

3

**Discussion**

    A.   <u>The Parties' Motions to Amend their Pleadings</u>

As a threshold matter, both parties seek leave to amend their pleadings pursuant to Rule 15, which states that a "court should freely give leave when justice so requires." Rule 15(a)(2), Fed. R. Civ. P. Where a party seeks leave to amend its complaint after the deadline in the CMO has passed, as here, the standard of Rule 16(b)(4) applies, not Rule 15(a)(2). "[A] motion for leave to amend filed outside the district court's Rule 16(b) scheduling order requires a showing of good cause." <u>Williams v. TESCO Servs., Inc.</u>, 719 F.3d 968, 977 (8th Cir. 2013); <u>see</u> Fed. R. Civ. P. 16(b)(4). "The primary measure of good cause is the movant's diligence." <u>Harris v. FedEx Nat'l LTL, Inc.</u>, 760 F.3d 780, 786 (8th Cir. 2014) (quotation omitted). Neither party addresses applicable the good cause standard in its motion.

        *1. Defendant's Motion to Amend its Answer and for Protective Order*

Defendant states that its proposed amended Answer abandons its counterclaims, admits "most of the allegations" in the Complaint, admits liability under the Lanham Act and Missouri unfair competition law in Counts I and II, and consents to the entry of the injunction Plaintiff seeks. (ECF No. 106 at 1.) Defendant contends Plaintiff's declaratory judgment claim in Count III is moot because Defendant has withdrawn its trademark registration applications and admitted in discovery responses that it has no trademark rights in the marks in the categories for which it applied to register to marks. (ECF No. 106-1 at 6-7.)

Defendant also moves for a protective order "pausing all discovery while the Court determines whether to enter final judgment or whether any issues remain to be resolved." (ECF No. 106 at 1-2.) Defendant states, "If the Court determines some issues remain, [it] requests that the Court hold a status conference and then issue an order allowing discovery only on the narrow remaining issues. [Defendant] consents to an appropriate extension of the discovery period to

4

allow any additional discovery to take place." (Id. at 2.)[1]  Defendant denies making any knowing misstatements or intentionally misleading or deceiving anyone, and asserts that Plaintiff is not entitled to actual damages. (ECF No. 106-1 at 1.)  Defendant asserts that "[i]n light of the posture of this case and the concessions [it] seeks to make in its answer, . . . no additional facts are relevant to Plaintiff's claims and Plaintiff needs no more discovery." (Id. at 2.)

Defendant also states that Dr. Brian Parks, its founder and Chief Operating Officer, pled guilty in the U.S. District Court for the Western District of Virginia to a felony count of distributing unapproved new drugs with the intent to defraud and mislead, between June 2017 and September 2019, in violation of 21 U.S.C. §§ 331(d), 333(a)(2), and 355. United States v. Parks, No. 1:20-CR-00046 (W.D. Va.).  Defendant represents that as part of Dr. Parks' guilty plea, he must forfeit $1,189,245.36 to the federal government.[2]  Defendant also asserts it is "experiencing severe financial distress," has reevaluated its position in this litigation as a result of these "collateral challenges," and therefore seeks to resolve the case. (Id. at 3-4.)

The Court finds that Defendant's desire to resolve the case in light of the recent criminal conviction of its founder constitutes good cause to amend its Answer under Rule 16(b)(4),

---

[1] As discussed below, Defendant has refused to participate in discovery, including the depositions of its corporate designee and officers, pending the resolution of its motion to amend and for protective order.

[2] Defendant filed an article about the charges against Parks as an exhibit to its Motion. The article states in part, "In pleading guilty, Parks admitted that he intended to mislead and defraud the FDA and consumers by omitting ingredients on MedFitRX product labels, falsely claimed MedFitRX was licensed and registered to sell these new drugs, imported raw drug ingredients with the intent to avoid regulatory scrutiny, and misrepresented MedFitRX products as 'dietary supplements' or 'sports supplements' to create the impression they were safe and legal to use." (ECF No. 106-5 at 2.)  The Court takes judicial notice that Parks was sentenced on February 16, 2021, to imprisonment of twelve months and one day, and was permitted to defer surrender to the Bureau of Prisons until after July 1, 2021. Parks, 1:20-CR-0046 (W.D. Va.) (Judgment in a Criminal Case, ECF No. 28 at 2.)  The court also imposed a Money Judgment Order of Forfeiture in the amount of $350,000 against Parks and co-defendant MedFit Sarmaceuticals, Inc., jointly and severally, representing "in aggregate the value of the unapproved new drugs[.]" (Id. at 8.)  The $350,000 was paid on February 15, 2021, by Parks and/or MedFit. Defendant's Motion fails to inform the Court that the sum Parks owed would increase to $1,189,245.36 *only* if the $350,000 payment was not timely made.  Defendant's representation to the Court was misleading.

despite Defendant's failure to address the standard of Rule 16(b)(4). The Court will grant Defendant leave to file its Second Amended Answer and Affirmative Defenses.

The Court will deny Defendant's motion for protective order to pause discovery, as live issues remain in the case. These include but are not limited to whether Defendant willfully misstated facts and/or sought to mislead the public, Defendant's clinical trial, whether Plaintiff is entitled to damages and/or potential disgorgement of Defendant's profits, and whether this is an "exceptional" case under the Lanham Act. The Court also disagrees with Defendant's assertion that Plaintiff's claims for declaratory judgment are necessarily moot.

*2. Plaintiff's Motion for Leave to Amend its Complaint*

Plaintiff filed a Motion for Leave to File a Second Amended Complaint (ECF No. 121) after filings its opposition to Defendant's Motion for leave to amend its Answer. Plaintiff's proposed Second Amended Complaint does not add any claims for relief, but instead "includes significant details regarding each of Defendant's Lanham Act and Missouri common law violations, on an element-by-element basis, as well as SI03's declaratory judgment claim." (ECF No 121 at 1.) Plaintiff asserts that Defendant has made and continues to make "at least 10 false and misleading statements" about Genepro on its packaging and in advertisements. (ECF No. 122 at 1-2.) Plaintiff contends that Defendant's Answer to its proposed Second Amended Complaint will "provide the Court and the parties a clear picture of what Defendant is actually willing to admit so that discovery can be completed efficiently and quickly." (ECF No. 121 at 1.)

As previously stated, Plaintiff fails to address the "good cause" standard of Rule 16(b)(4), including the issue of its diligence in seeking leave to amend. As to the substance of its Motion, Plaintiff seeks to add additional factual allegations in support of its Lanham Act and unfair competition claims, but cites no legal authority for the proposition that is it necessary or

6

appropriate to amend a complaint to additional factual allegations about existing claims. Plaintiff also does not assert that absent amendment, it cannot present at trial or include in a dispositive motion facts and evidence to support its Lanham Act and unfair competition claims other than those alleged in its Complaint. Plaintiff's proposed amendment to its Complaint to add numerous factual allegations in support of its claims strikes the Court as unnecessary.

The Court agrees with Plaintiff that its declaratory judgment claim is not moot and as discussed more fully below it is entitled to obtain discovery responses from Defendant. That said, under the Court's scheduling order, this matter must be moving toward conclusion. The Court will deny Plaintiff's Motion for Leave to File a Second Amended Complaint without prejudice.

B. <u>Plaintiff's Motion to Compel the Depositions of Defendant and its Employees</u>

In this Motion (ECF No. 108), Plaintiff states that it diligently conducted discovery to meet the CMO's February 12, 2021 deadline, and asked Defendant on December 30, 2020, to identify available dates for the depositions of Defendant and other witnesses, including its officers Brian Parks, Darria Parks, Zac Cain; Defendant's expert Marc Shapiro, and a Rule 30(b)(6) deposition of Defendant. Plaintiff states that while Defendant initially agreed to work with it to schedule the depositions, it later refused because of its motion for leave to file an amended answer and for a protective order against further discovery. Plaintiff seeks an order requiring Defendant to make its witnesses available on separate days between February 1 and February 12, 2021.

The Court will grant this Motion to the extent that Defendant shall cooperate with Plaintiff and make its witnesses available for deposition on separate days between March 10, 2021, and March 22, 2021. On its own motion, the Court will amend the Case Management Order to extend the discovery and dispositive motion deadlines, but will not change the trial date.

7

### C. Plaintiff's Motions for Temporary Restraining Orders and for Expedited Discovery

#### 1. *Motions for TRO*

Plaintiff filed a Motion for a Temporary Restraining Order Directing Defendant to Immediately Cease Sales and Marketing of Genepro, and for Expedited Discovery (ECF No. 111), and a Motion for a Temporary Restraining Order Freezing Defendant's Assets, and for Expedited Discovery (ECF No. 114). Plaintiff has not requested a hearing on its TRO motions and the Court finds none is warranted.

Four factors are relevant in determining whether to issue a temporary restraining order: (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest. Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981) (en banc). The likelihood of success on the merits is the most important factor. Roudachevski v. All-Am. Care Centers, Inc., 648 F.3d 701, 706 (8th Cir. 2011).

When assessing a movant's probability of success on the merits, the standard is whether that party has a "fair chance of prevailing." Planned Parenthood Minn., N. Dak., S. Dak. v. Rounds, 530 F.3d 724, 732 (8th Cir. 2008) (en banc). The fair-chance standard does not require the movant to "show a greater than fifty per cent likelihood that he will prevail on the merits." Id. at 731. But even when a plaintiff has a strong claim on the merits, injunctive relief is improper absent a showing of a threat of irreparable harm. Dataphase Sys., 640 F.2d at 113. The moving party bears the burden of proof for injunctive relief. General Motors Corp. v. Harry Brown's, LLC, 563 F.3d 312, 318-19 (8th Cir. 2009).

Here, Plaintiff does not establish that it has a fair chance of prevailing on the merits of either motion. The evidentiary support it offers for the TRO motions is fairly slim at this point

8

and based in part on speculation, and the Court finds the motions are premature. Plaintiff points to Defendant's refusal to participate in discovery, but this cannot serve as a substitute for evidence to show Plaintiff's likelihood of success.

Further, as legal authority in support of its Motion for TRO to freeze Defendant's assets, Plaintiff cites Lanham Act trademark infringement and counterfeiting cases, which do not establish that similar relief is available or appropriate in a Lanham Act false advertising case such as this one.[3] Similarly, Plaintiff has not cited any legal authority to establish the Court's authority to order that Defendant to cease sales and recall its products in a Lanham Act false advertising case. Instead, Plaintiff argues it can show that Defendant's mislabeling of Genepro violates the Federal Food, Drug & Cosmetic Act, 21 U.S.C. §§ 301, et seq., "and by extension . . . the Lanham Act." (ECF No. 112 at 5.) The FDCA is not at issue here.

The Court also finds Plaintiff has not shown it will suffer irreparable harm absent the TROs. Plaintiff attempts to rely on a presumption of irreparable harm for its TRO to cease Defendant's sales.[4] However, in a false advertising case "where a defendant is guilty of misrepresenting its own product without targeting any other specific product, it is erroneous to apply a rebuttable presumption of harm in favor of a competitor." Porous Media Corp. v. Pall Corp., 110 F.3d 1329, 1334 (8th Cir. 1997). Even when such a presumption "applies in a Lanham Act dispute between competitors, the plaintiff 'must show that it will suffer irreparable harm absent the injunction.'" Buetow v. A.L.S. Enters., Inc., 650 F.3d 1178, 1183 (8th Cir.

---

[3]Plaintiff primarily cites 3M Company v. Individuals, P'ships, and Unincorporated Assn's, 2020 WL 6817650, at *3 (D. Minn. Nov. 20, 2020), in which the plaintiff asserted trademark infringement and counterfeiting in violation of the Lanham Act against defendants allegedly selling counterfeit EM N955 respirator masks, and other trademark infringement and counterfeiting cases cited in 3M Company. (ECF No. 115 at 3-4.)

[4]Plaintiff cites Warner Brothers Entertainment, Inc. v. X One X Productions, 840 F.3d 971, 982 (8th Cir. 2016) (stating in a trademark infringement case that "a finding that *likelihood of confusion* exists results in a presumption that a threat of irreparable harm exists.") (emphasis added). (ECF No. 112 at 11.)

2011). Plaintiff does not make such a showing here. And Plaintiff does little more than assert it is being irreparably harmed in its TRO to freeze Defendant's assets. (ECF No. 115 at 7.) The Court will deny Plaintiff's Motions for Temporary Restraining Order.

### 2. *Motions for Expedited Discovery*

Plaintiff's TRO Motions also ask for expedited discovery, specifically that Defendant be ordered to respond to all pending discovery requests within seven days, to all further written discovery within seven days of service, and to make its witnesses available before the now-passed discovery deadline of February 12, 2021. The Court will grant these Motions to the extent that Defendant is ordered to respond to all pending discovery requests by March 8, 2021.

### D. Plaintiff's Third Motion to Compel Discovery Responses

Plaintiff filed a Third Motion to Compel Discovery Responses (ECF No. 132) on February 18, 2021, to compel Defendant's responses to Plaintiff's Seventh Set of Requests for Production, Third Set of Interrogatories, and Third Set of Requests for Admission. Plaintiff states that Defendant's responses to each discovery request were due on the discovery deadline of February 12, 2021, and that it filed the motion "to avoid any claim that [it] did not abide by" the CMO's deadline for motions to compel. (Id. at 2.) Defendant's response to the Third Motion to Compel is not yet due. This Motion will be denied as moot, without prejudice, based on the Court's order that Defendant respond to all pending discovery requests by March 8, 2021.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Musclegen Research, Inc.'s Motion for Leave to File Amended Answer and for a Protective Order (ECF No. 106) is **GRANTED in part** and **DENIED in part**; the Motion is **GRANTED** as to the Motion for Leave to File Amended Answer and **DENIED** as to the Motion for Protective Order.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall detach and docket Defendant's Second Amended Answer and Affirmative Defenses, which was submitted as an attachment 106-3 to the Motion for Leave, and terminate the counterclaim parties on the docket sheet.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File a Second Amended Complaint (ECF No. 121) is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Compel the Depositions of Defendant and its Employees (ECF No. 108) is **GRANTED**, and Defendant shall cooperate with Plaintiff and make its witnesses available for deposition on separate days between March 10, 2021, and March 22, 2021.

**IT IS FURTHER ORDERED** that on the Court's own motion, the Case Management Order (ECF No. 75) is **AMENDED** as follows:  The parties shall complete all discovery by **April 2, 2021**, and file all dispositive motions by **May 3, 2021**, with oppositions due 30 days after the motion is filed, and replies due 14 days after the opposition is filed.  The CMO otherwise remains in full force and effect, including the **August 16, 2021** trial date.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for a Temporary Restraining Order Directing Defendant to Immediately Cease Sales and Marketing of Genepro (ECF No. 111), and Plaintiff's Motion for a Temporary Restraining Order Freezing Defendant's Assets (ECF No. 114), are **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motions for Expedited Discovery (ECF Nos. 111, 114) are **GRANTED** to the extent that Defendant shall respond to all outstanding discovery requests by **March 8, 2021**.

**IT IS FINALLY ORDERED** that Plaintiff's Third Motion to Compel Discovery Responses (ECF No. 132) is **DENIED as moot**, without prejudice.

_____
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this 26th day of February, 2021.